FILED

UNITED STATES DISTRICT COURT  99 FEB 10 PM 3: 01
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION                U.S. DISTRICT COURT
                                 N.D. OF ALABAMA

VLADIMIR ILIEV MARINOV,                )
                                       )
          Plaintiff,                   )
                                       )          CV-97-P-1175-S
-vs.-                                  )
                                       )
WESTINGHOUSE ELECTRIC                  )
CORPORATION,                           )          **ENTERED**
                                       )
          Defendant.                   )          FEB 11 1999

## MEMORANDUM OPINION

The plaintiff, Vladimir Iliev Marinov, originally filed this suit against Westinghouse[1] on March 31, 1997 in the Circuit Court of Jefferson County, Alabama, asserting claims for fraud and breach of contract. The defendant removed the action to this court on May 10, 1997. On March 2, 1998, the defendant filed its Motion for Summary Judgment or, in the Alternative, for Partial Summary Judgment. However, on that same date, the court granted to plaintiff's Motion for Leave to Amend Complaint to add a claim for work and labor done. The defendant responded by filing a subsequent Motion for Summary Judgment on the New Claim in Plaintiff's Amended Complaint on June 1, 1998.

The court considered the defendant's original summary judgment motion at the May 29, 1998 motion docket, after which time the motion was taken under submission. The second summary judgment motion was heard at the July 31, 1998 motion docket. Both motions remained under

---

[1]Defendant Brucker was dismissed by order of this court.

1

47

submission as of July 31, 1998. After careful consideration of the briefs, evidence, and arguments of the parties in this case, the court finds that summary judgment is due to be granted on the plaintiff's claims for fraud and work/labor done. However, because there are genuine issues of material fact, the court finds that the plaintiff's breach of contract claim should not be dismissed on summary judgment. The defendant's summary judgment motion is therefore due to be granted only in part.

## Facts[2]

In 1992, Westinghouse Electric Corporation ("Westinghouse") embarked on a "Guest Engineer" program that brought foreign individuals with nuclear backgrounds to America to learn about new technology. The goals of the program were to train the guest engineers, learn about the technology in the foreign countries from the engineers, and build relationships with the engineers that would potentially lead to foreign sales. The engineers who qualified for the program were paid by their home employer and remained an employee of their home employer at all times.[3] According to the standard contract used for the guest engineer program, Westinghouse paid the guest engineers a monthly stipend to account for living expenses while in America. The terms of the program called for the engineers to participate in the program for one year, with an extension possible at the conclusion of the initial term.[4]

---

[2]The facts are presented in the light most favorable to the non-moving party.

[3]Because the guest engineers are citizens of and are employed by their foreign companies, the engineers are required to obtain non-immigrant visas in order to live temporarily in the United States while participating in the program. If, at any time, the participants seek permanent residency in the United States, they are expelled from the guest engineering program.

[4]The extent of the extension is what is at issue in this litigation. Westinghouse contends that the guest engineers participate in the program for an initial one year term and may then apply for a second one year term only. The plaintiff contends that Westinghouse contracted with him for a second term that extended beyond a twelve month period.

Mr. Marinov began his term as a guest engineer in the Westinghouse program in March of 1993 after Marinov's foreign employer, Montagi Kozloduy Company ("Montagi") agreed to the terms of the standard contract. Although his initial term ended in March of 1994, Marinov performed satisfactorily and Westinghouse decided to renew Marinov's contract.[5] The main contention in this case, however, revolves around the length of the renewal term that existed between Marinov and Westinghouse. Marinov contends that Westinghouse renewed his contract for a period of eighteen months, beginning in September of 1994.[6] In support of his contention, Marinov cites to a September 9, 1994 letter sent to him by Georgia Brucker, a Westinghouse employee in the Human Resources department, which states:

> Dear Mr. Marinov,
>
> I am pleased to advise you that the Westinghouse Electric Corporation has awarded you an appointment for 18 months on our International Exchange/Training Program.
>
> Your appointment is scheduled to commence on September 15, 1994 and at that time you will be given the necessary program orientation and instructions regarding your particular assignment in Birmingham, Alabama.
>
> During your assignment, you will be entering our special advanced

---

[5] Although his initial term ended in March 1994, the plaintiff asserts that Westinghouse impliedly agreed to continue to employ and pay Marinov until Westinghouse and Marinov could enter into a subsequent agreement for Marinov's participation in the program. No subsequent agreement between Montagi and Westinghouse was ever reached.

[6] Before coming to America, Marinov applied for and received a J-1 (non-immigrant) visa. The visa was granted in March of 1993 and was valid for eighteen months. The visa, therefore, expired in September of 1994. When Marinov was awarded a second term with Westinghouse, he had to once again apply for a J-1 visa to cover the months after September of 1994 in which he would still be working in America.

3

> training program which covers First-of-a-Kind Engineering in
> conjunction with the AP600 Simplified Passive Advanced Light Water
> Reactor Detailed Design Program.
>
> While with Westinghouse, you will be considered an international
> visitor, and in no way whatsoever will you displace any American
> citizen or American resident alien of a position.
>
> For the 18 months of your assignment, Westinghouse will provide a
> living allowance of $1575 per month, and your salary will continue to
> be paid by your employer in Bulgaria . . . .

(Plaintiff's Evidentiary Submission).

Westinghouse, on the other hand, asserts that the program contract clearly calls for a one year

initial term with a possibility of renewal for a second one year term. According to Westinghouse,

Marinov's second term began in March of 1994 and ended March of 1995. Marinov admits that he

was informed near the end of his second one year term that his assignment would not be renewed for

a third one year term and that his living allowance from Westinghouse would end in March of 1995.

Marinov stopped receiving his living allowance payments after March 31, 1995. Nevertheless, he

continued working for Westinghouse until March of 1996. Marinov's foreign employer also stopped

paying him his salary after March of 1995 as a result of Westinghouse's failure to renew Marinov's

guest engineer contract. Marinov asserts that is was not until the Summer of 1996 that he became

aware that his salary and benefits had been discontinued by Montagi.

In addition, in the fall of 1994, Marinov submitted documentation to the United States in

order to apply for permanent residency through the Government's lottery system. Marinov was

successful in the lottery and was awarded the right to apply for permanent residency in early 1995.

In July of 1995, Marinov received permanent U.S. resident status and has never returned to Bulgaria.

Marinov filed this lawsuit in March of 1997, alleging that Westinghouse prematurely

4

terminated his participation in the guest engineering program and that Westinghouse is liable for state law contract and tort damages. Specifically, Marinov alleges that his contract with Westinghouse should not have ended until March 1996, the time at which his renewed J-1 visa was to expire.

### Anaylsis

#### I. Fraud

Under Alabama law, fraud claims must be brought within two years after the plaintiff first discovers the facts constituting the fraud. Ala. Code § 6-2-3. In this case, Marinov stopped receiving cost of living payments from Westinghouse and his regular salary from Montagi after March of 1995. Although the plaintiff relies heavily on Georgia Brucker's letter of September 9, 1994, the plaintiff nevertheless received other letters from Westinghouse in February of 1995 stating that his second one-year assignment would end in March of 1995. Marinov did not file this lawsuit until March 31, 1997, over two years after receiving the February 1995 notice that his second one-year assignment would be ending. Regardless of the September 9, 1994 letter, Marinov was put on notice in February of 1995 that his term would be ending in a month and that he would not be receiving any further payments after that date. The plaintiff's cause of action for fraud accrued upon receipt of the February 1995 letter notifying him that his employment term would end in March of 1995. No reasonable jury would find otherwise. Therefore, the defendant is due to be granted summary judgment on statute of limitations grounds for the fraud claim.

#### II. Breach of Contract

In Alabama, a valid and binding contract is formed with there is an offer, acceptance, and

5

consideration. See Steiger v. Huntsville City Bd. of Ed., 653 So. 2d 975, 978 (Ala. 1995). In this case, there are genuine issues of material fact which preclude an entry of summary judgment. The court finds that a jury should decide the questions of fact. Therefore, the summary judgment on the breach of contract claim is due to be denied.

## III. Work and Labor Done

In essence, the plaintiff argues that, because Westinghouse was aware that it had not received official approval from Montagi for the second one year term, Westinghouse somehow took on the responsibility to pay for his work and labor done if Montagi did not. The plaintiff attempts to characterize this claim as arising under an implied contract, since Marinov did continue to work in America for Westinghouse, even though there had been no express approval of the second term by his foreign employer.[7] Such a claim must fail because there are no genuine issues of material fact that remain for the jury. Any blame for Montagi's failure to pay his salary during his tenure in America lies with his foreign employer and not with Westinghouse. Apparantly, Westinghouse was not even aware of the alleged failure of Montagi to pay Marinov's salary until after this litigation began in 1997.

Because no genuine issues of material fact exist, summary judgment is due to be granted on the plaintiff's claim for work and labor done.

## Conclusion

For the reasons stated above, the court finds that the defendant's motion for summary

---

[7]According to Marinov, the Montagi branch where Marinov was employed closed sometime in 1994, although Montagi still maintained its headquarters and other branches in Bulgaria.

6

judgment is due to be granted as to the plaintiff's fraud and work/labor done claims. However, the court declines to grant summary judgment as to the breach of contract claim. This litigation will continue on the breach of contract claim only.

Date: _____ *Feb. 10* _____, 1999.

_____
Chief Judge Sam C. Pointer, Jr.

Service List:
      Dennis G. Pantazis
      N. Ronald Downey, III
      Deborah A. Sudbury
      Rayne Rasty
      Theresia M. Moser
      J. Fredric Ingram

7